UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-_____-___

FAITH VICKERIE,

    Plaintiff,

v.

DIVERSIFIED INVESTMENT HOLDINGS, INC., a Colorado corporation; THE CONSULTANTS FIRM INTERNATIONAL, INC., a Colorado corporation; MARTIN GROSS, an individual; MATTHEW KRAUSE, an individual; ANGELA BAKER, an individual; NOAH RUSSO, an individual; and JOHN DOES 1-4

    Defendants.

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Faith Vickerie, and alleges and avers the following complaint against Defendants:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Faith Vickerie is an individual who resides in Alpharetta, Georgia.

2. Defendant Diversified Investment Holdings, Inc. is a Colorado corporation with a principal place of business at 102 S. Tejon St., Suite 1100, Colorado Springs, CO 80903 ("Diversified").

3. Defendant The Consultants Firm International, Inc. is a Colorado corporation with a principal place of business at 1434 Spruce St., Suite 100, Boulder, CO 80302 ("Consultants").

4. Defendant Martin Gross ("Gross") is the CEO of Diversified. Upon information and belief, Gross formulates, controls, directs, supervises, perpetuates, manages, and has knowledge of and acquiesces in the practices and policies of Diversified to such a degree as to make him personally liable for the deceptive trade practices and other claims alleged herein. In addition, Gross knew or should have known of sales practices used by employees working on his and Diversified's behalf.

5. Defendant Matthew Krause ("Krause") is the CEO of Consultants. Upon information and belief, Krause formulates, controls, directs, supervises, perpetuates, manages, and has knowledge of and acquiesces in the practices and policies of Consultants to such a degree as to make him personally liable for the deceptive trade practices and other claims alleged herein. In addition, Gross knew or should have known of sales practices used by employees working on his and Consultants' behalf.

6. Defendant Angela Baker ("Baker") is an account manager with Diversified. Upon information and belief, she formulates, controls, directs, supervises, perpetuates, manages, and has knowledge of and acquiesce in the practices and policies of Diversified to such a degree as to make her personally liable for the deceptive trade practices and other claims alleged herein. In addition, she knew or should have known of sales practices used by employees working on Diversified's behalf.

7. Defendant Noah Russo ("Russo") is a manager with Consultants. Upon information and belief, he formulates, controls, directs, supervises, perpetuates, manages, and has knowledge of and acquiesce in the practices and policies of Consultants to such a degree as to make him personally liable for the deceptive trade practices and other claims

alleged herein. In addition, he knew or should have known of sales practices used by employees working on Consultants' behalf.

8. Upon information and belief, Gross, Krause, Baker, and Russo may be fictitious names used by individuals to perpetrate fraud on their victims, including Plaintiff. Accordingly, John Does 1-4 are included as Defendants in this case to reserve Plaintiff's right to add individual Defendants if and when Plaintiff determines the true identities of Gross, Krause, Baker, and Russo.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. This Court has subject matter jurisdiction of this case under 28 U.S.C. § 1332(a)(1) because it is between citizens of different states and the amount in controversy is in excess of $75,000.00.

**GENERAL ALLEGATIONS**

11. In or around July 2018, Plaintiff received an unsolicited call from Consultants the purpose of which was to determine if Plaintiff wanted to sell her right to use interest in certain property described as a two bedroom unit at Villa del Palmar in Cancun, Mexico (the "Timeshare").

12. Plaintiff agreed to sell the Timeshare and, on July 23, 2018, entered into a Guaranteed Purchase/Sale Contract (the "Contract") by and between Plaintiff, Diversified, Consultants, and Carlos Bedoya Clark (the "Buyer"). Upon information and belief, Buyer is either a fictional person or is part of Diversified's and Consultants' scam. A true and correct copy of the Contract is attached hereto as Exhibit 1.

13. According to the Contract, Plaintiff agreed to sell and Buyer agreed to purchase the Timeshare for $212,000.00. To coordinate and close the transaction,

Diversified was to receive a fee of $3,750.00 and Consultants was to receive a fee of five percent (5%) of the purchase price from the Buyer.

14. Consultants represented in the Contract that it had received the full purchase funds and that such funds "have been deposited into the designated closing/guaranteed account."

15. To the extent that Plaintiff had to pay any fees, taxes, or costs related to the sale of the Timeshare, the Contract provided that Plaintiff "shall be reimbursed in full at closing by Buyer" for all such payments.

16. Soon after the parties entered into the Contract, Diversified and Consultants demanded that Seller pay a vast array of fees, taxes, and other amounts in connection with the sale of the Timeshare. From July 23, 2018 through March 28, 2019, Diversified and Consultants demanded that Plaintiff pay and Plaintiff paid the following amounts by directing the funds to a bank account in Guadalajara, Mexico identified by Diversified and Consultants:

    (a) Foreign Investment Registration of $3,650.00;

    (b) Closing and administration fee of $4,250.00;

    (c) Maintenance fee of $1,757.25;

    (d) S.R.E. permit fee of $3,900.00;

    (e) 16% IVA tax of $33,920.00;

    (f) Resort fee of $1,762.25;

    (g) Excess income tax of $53,000.00;

    (h) Remittance of funds fee of $12,153.00;

    (i) Free and clear certificate fee of $6,500.00;

      (j)      Luxury tax of $80,674.00;

      (k)      Remittance of funds fee of $8,964.71;

      (l)      Prepaid insurance of $900.00;

      (m)      Capital gains tax of $10,000.00;

      (n)      Miscellaneous fee of $125.00; and

      (o)      International wire transfer fee of $270.00.

Upon information and belief, the basis for all of the above funds that Plaintiff paid to Diversified and Consultants was false.

17. Upon information and belief, the bank account to which Plaintiff directed all of the above funds is the account of Proper Ground SA de CV, a Mexican subsidiary of Diversified.

18. On March 28, 2019, Plaintiff, Diversified, Consultants, and Buyer entered into an Addendum to the Contract in which they identified all of the above fees and agreed that Buyer would pay all of the fees at closing. A true and correct copy of the Addendum is attached hereto as <u>Exhibit 2</u>.

19. Despite the fact that Diversified and Consultants already had demanded that Plaintiff pay over $200,000.00 in fees in connection with the sale of the Timeshare and Plaintiff had paid such fees, Diversified and Consultants continued to demand that Plaintiff pay additional fees.

20. On or about July 1, 2019, Diversified and Consultants demanded that Plaintiff pay a "good faith deposit" of $50,000.00 and executed a document in which Diversified and the Buyer "absolutely and unconditionally guarantee[d]" that Plaintiff would receive the purchase price for the Timeshare plus all of the fees paid by Plaintiff –

a total of $484,427.20.  Plaintiff paid the additional $50,000.00.

21. Incredibly, Diversified and Consultants were not finished.  On or about July 2, 2019, they caused an "attorney" supposedly employed with Mendez Abogados to contact Plaintiff for the ostensible purpose of assisting her with collecting her money.  Upon information and belief, the attorney, Maria Luisa Ocampo Parra, is either fictional or is part of Diversified's and Consultants' scam.

22. To perpetuate the scam and gain Plaintiff's trust, the attorney sent Plaintiff a "bank statement' showing that $484,427.20, the amount owed to Plaintiff, had been deposited in an account at Santander bank in Guadalajara, Mexico.

23. On July 9, 2019, the attorney sent Plaintiff an e-mail in which she represented that "I'm at the bank performing your payout."

24. However, two days later, the attorney notified Plaintiff and Russo that the bank could not release the funds due to concerns that the money was being laundered but that payment of $93,941.17 for an "SPEI certificate" would resolve the issue.

25. Plaintiff refused to pay for the "SPEI certificate."  But, the attorney and Russo assured Plaintiff that they were doing everything possible to get Plaintiff's funds and would be successful doing so if Plaintiff paid the $93,941.17.  Plaintiff paid the amount.  Upon information and belief, the basis for the payment was false.

26. Plaintiff did not receive her funds.  Instead, on August 28, 2019, Baker and Russo notified Plaintiff that the wire transfer of her funds was "suspended by the Financial Intelligence Unit… from the Ministry of Finance" and could not be initiated unless Plaintiff paid another $23,000.00.

27. When Plaintiff refused to pay this fee, Baker informed her that she was

"under investigation for Money Laundering" and that $65,000.00 had to be paid in order to rectify the situation. Plaintiff refused to pay this fee.

28. Plaintiff demanded the return of all of her money from Diversified and Consultants, and both have refused. Instead, Diversified and Consultants, primarily through Russo, have continued to harass Plaintiff and to demand more money from her. In a communication to Plaintiff on November 8, 2019, Russo told Plaintiff that she would have to go to Mexico to get her money and impliedly threatened violence if she did so:

> I'm sure you heard what happened recently down there with the LeBaron family right? So it's not the safest place to be in at the moment.

Russo's reference to the LeBaron family is to an incident on November 4, 2019 in which nine members of the family were killed in Mexico.

## CLAIMS FOR RELIEF

### I. BREACH OF CONTRACT - RESCISSION
### (AGAINST DIVERSIFIED AND CONSULTANTS)

29. The allegations contained in paragraphs 1 through 28 are incorporated by reference as if fully set forth herein.

30. Diversified guaranteed that it would pay Plaintiff $484,427.20 if she made a "good faith deposit" of $50,000.00 on or about July 1, 2019.

31. Plaintiff made the "good faith deposit" of $50,000.00 and, subsequently, made another payment to Diversified and Consultants in the amount of $93,941.17.

32. Plaintiff complied with all of her obligations under the July 1, 2019 agreement and under the Contract and Addendum.

33. Diversified and Consultants breached the July 1, 2019 agreement, the Contract, and the Addendum by failing to pay Plaintiff the funds owed to her and

guaranteed to be paid by Diversified and Consultants. Diversified and Consultants further breached the Contract by failing to close the sale of the Timeshare.

34. As a result of Diversified's and Consultants' material breaches of the Contract, the Addendum, and the July 1, 2019 agreement, Plaintiff is entitled to rescind the contracts and recover all amounts that she paid pursuant to the contracts.

## II.    CIVIL THEFT
### (AGAINST DIVERSIFIED, CONSULTANTS, GROSS, AND KRAUSE)

35. The allegations contained in paragraphs 1 through 34 are incorporated by reference as if fully set forth herein.

36. Diversified, Consultants, and their principals received funds from Plaintiff that Plaintiff paid only because such funds were supposed to be reimbursed to her.

37. Diversified, Consultants, and their principals failed to perform their obligations under the Contract and failed to return Plaintiff's funds to her.

38. Diversified, Consultants, and their principals were not authorized by Plaintiff to keep her funds if they could not close the sale of the Timeshare and pay her the purchase price and all of the funds for which she was supposed to be reimbursed.

39. Diversified, Consultants, and their principals have knowingly kept and exercised control over Plaintiff's money.

40. By keeping and exercising control over Plaintiff's funds, Diversified, Consultants, and their principals intended to permanently deprive, and have permanently deprived, Plaintiff of the use and benefit of such funds.

41. Upon information and belief, Diversified, Consultants, and their principals have knowingly used Plaintiff's money so as to permanently deprive her of the use and benefit of such funds.

42. Because Diversified, Consultants, and their principals intentionally, knowingly and permanently deprived Plaintiff of the use and benefit of her funds, Plaintiff is entitled to treble damages, costs and attorneys' fees pursuant to C.R.S. § 18-4-405.

### III. CONVERSION
### (AGAINST DIVERSIFIED, CONSULTANTS, GROSS, AND KRAUSE)

43. The allegations contained in paragraphs 1 through 42 are incorporated by reference as if fully set forth herein.

44. Diversified and Consultants received funds from Plaintiff premised on her belief and understanding that she would be reimbursed for all such funds upon the closing of the sale of the Timeshare, which closing was guaranteed by Diversified and Consultants.

45. Diversified and Consultants failed to closed the sale of the Timeshare.

46. Plaintiff demanded that Diversified and Consultants return her funds to her.

47. Diversified and Consultants failed and refused to return such funds.

48. Upon information and belief, Diversified, Consultants, and their principals have taken dominion over such funds.

### IV. VIOLATION OF COLORADO CONSUMER PROTECTION ACT
### (AGAINST ALL DEFENDANTS)

49. The allegations contained in paragraphs 1 through 48 are incorporated by reference as if fully set forth herein.

50. In their business dealings with Plaintiff, Diversified, Consultants, Gross, Krause, Baker, and Russo engaged in unfair and deceptive trade practices, as defined

under C.R.S. § 6-1-101, *et seq.*, by misleading Plaintiff and other customers as to their ability to sell timeshares, the need for Plaintiff and other sellers of timeshares to pay funds in connection with the illusory closing of the sale of timeshares, the reason for the payment of such funds, the fact that they had a buyer for timeshares and that the buyer had deposited with them the funds necessary to purchase the timeshare, and the fact that they had an attorney in Mexico who would assist with payment to Plaintiff and other sellers of timeshares.

51. Defendants engaged in unfair and deceptive trade practices in the course of their business of brokering, coordinating, and closing the sale of timeshares.

52. Defendants' actions impact the potential and actual consumers of its products and services, including Plaintiff.

53. Plaintiff and other similarly situated customers have been injured by Defendants' unfair and deceptive trade practices by entering into contracts for the sale of their timeshares and by paying Defendants' money supposedly to assist with the closing of the sale of timeshares.

54. Plaintiff's injuries and the injuries of other similarly situated customers are a direct and proximate result of Defendants' unfair and deceptive trade practices.

## V. FRAUD IN THE INDUCEMENT
### (AGAINST DIVERSIFIED, CONSULTANTS, GROSS, AND KRAUSE)

55. The allegations contained in paragraphs 1 through 54 are incorporated by reference as if fully set forth herein.

56. Diversified, Consultants, and their principals made material misrepresentations to Plaintiff as to, among other things, their ability to sell the Timeshare, the need for Plaintiff to pay funds in connection with the illusory closing of

the sale of the Timeshare, the reason for the payment of such funds, the fact that they had a buyer for the Timeshare and that the buyer had deposited with them the funds necessary to purchase the Timeshare, and the fact that they had an attorney in Mexico who would assist with payment to Plaintiff.

57. When Defendants made such misrepresentations, they knew or should have known that such misrepresentations were false or they were aware that they did not know whether such misrepresentations were true or false.

58. Upon information and belief, Defendants made misrepresentations to Plaintiff with the intent that Plaintiff would rely on the misrepresentations.

59. Plaintiff justifiably relied on Defendants' misrepresentations.

60. As a result of justifiably relying on Defendants' misrepresentations, Plaintiff suffered damages in an amount to be proven at trial.

## JURY DEMAND

61. Pursuant to F.R.C.P. 38(a), Plaintiff demands a trial by jury of all claims asserted herein.

## EXEMPLARY DAMAGES

62. Pursuant to C.R.S. § 13-21-102, Plaintiff reserves the right to amend this Complaint to include a claim for exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment against Defendants in the amount of her actual damages, additional and exemplary damages as appropriate and/or allowed by law, interest as prescribed by law, costs and attorneys' fees as prescribed by law, and such other and further relief to which Plaintiff may be justly entitled.

DATED this 18th day of November 2019.

/s/Paul M. Grant
Paul M. Grant
Goodreid & Grant LLC
1801 Broadway, Suite 1400
Denver, CO 80202
Phone: (720) 810-4235
pgrant@goodreidgrant.com

ATTORNEYS FOR PLAINTIFF